Birge v. Bock.

JULIUS  C.  BIRGE,  Respondent,  v.  A.  F.  BOCK, Appellant.

St. Louis Court of Appeals, November 25, 1890, and February 10, 1891.

1.   **Vendor and Vendee:** EXHIBITION OF TITLE BY VENDOR.   Before a vendee is bound to accept a conveyance of land sold to him, the vendor must exhibit a good title.   If there appears to be a gap in the title the vendor must supply the gap and communicate to the vendee evidence showing that the title is good in fact.   And where the vendor, before communicating such evidence to the vendee, disables himself from conveying the property to the vendee, as where he sells and conveys the property to a third person, an action for damages against the vendee will not lie on his part.   What is a good title for this purpose, is considered and defined by the court.

2.   **Practice, Appellate:** CHANGING THEORY OF TRIAL.   A cause should not be tried on one theory in the trial court, and disposed of on another theory in the appellate court.

3.   **Principal and Agent:** HEARSAY EVIDENCE.   After an authority given to an agent has been executed, conversations between the principal and agent in regard to the reasons actuating the latter in the manner of his execution of the authority are hearsay evidence as against a third person, with whom the agent had dealings.

*Appeal from the St. Louis City Circuit Court.*—HON. JAMES E. WITHROW, Judge.

REVERSED AND REMANDED.

*Kehr & Tittman,* for appellant.

(1) The previous decision in this case, as well as the numerous authorities then cited, establish beyond controversy that, while a contract for the sale of land is still executory, by operation of law and without any agreement of the parties to that effect, the purchaser has a right to demand a good and marketable title. *Birge v. Bock,* 24 Mo. App. 330. The purchaser has a right, not merely to a good but to an indubitable title; only such title is marketable. *Swayne v. Lyon,* 67 Pa. St. 436; 2 Warvelle on Vendors, sec. 18, p. 760; 1 Sugden on Vendors, p. 577; *Shriver v. Shriver,* 86 N. Y. 576; *Mastin v. Grimes,* 88 Mo. 478–90.; *Hymers v. Branch,* 6 Mo. App. 511–14. And the vendee has the right whilst investigating the title to call on the vendor for explanations and proof of his title, and it is the duty of the latter to furnish them. 1 Warvelle on Vendors, sec. 1, pp. 302–3; sec. 2, p. 304; sec. 7, p. 311; Warvelle on Abstracts, pp. 32, 33; sec. 19, p. 238; sec. 19, p. 506; sec. 24, p. 510. (2) Not only was the purchaser in the case at bar entitled under the law to a good and marketable title, but under the contract of the parties he was entitled to a "perfect title." This implies that the purchaser was not bound to take the land unless he found a good record title. *Richmond v. Gray,* 3 Allen, 25, 26; *Taylor v. Williams,* 45 Mo. 80, 81; *Noyes v. Johnson,* 139 Mass. 436; *George v. Conhaim,* 38 Minn. 338; *Horn v. Butler,* 39 Minn. 515–17; *Cunningham v. Sharp,* 11 Humph. 116. Under our recording system no title can be said to be marketable that is not fairly deducible of record. *Dodd v. Williams,* 3 Mo. App. 278.

*Rowell & Ferriss* and *J. H. Zumbalen,* for respondent.

(1) The plaintiff showed that he had a perfect title at the time of the sale. Cooley's Black. Com., p. 17, n; *Welsh v. Dutton,* 79 Ill. 465; *Moser v. Cochrane,* 107

N. Y. 35; *Spring v. Sanford,* 7 Paige, 550; *Schermer-horn v. Niblo,* 2 Bosw. 161; *Hellreigel v. Manning,* 97 N. Y. 56; *Shriver v. Shriver,* 86 N. Y. 575; *Fleming v. Burnham,* 100 N. Y.; *Kip v. Hirsh,* 103 N. Y. 565; 1 Warvelle on Vendors, p. 305; Hilliard on Vendors, p. 218; *Luckett v. Williamson,* 37 Mo. 338; *Isaacs v. Skrainka,* 95 Mo. 517. (2) The question of the release of defendant under the contract was one of fact, fairly presented to the jury under the instructions and decided by them.

THOMPSON, J.—This is the same action which was before the court on a former appeal. 24 Mo. App. 330. On the former appeal two questions were before the court: Whether in an action by the vendor upon an executory contract for the sale of land, to recover damages for the non-performance of the contract, the burden of proof to show that there was a good title is upon the vendor or vendee; and incidentally to the first question, whether a petition which fails to state that, at the time of making the contract, the vendor had a good title to the land, states a cause of action. The court held that, in such a case, the burden of proof is upon the vendor; and, consequently, that a petition, which fails to state that, at the time of the making of the contract, the vendor had a good title, states no cause of action. After the cause was remanded by this court to the circuit court, the plaintiff amended his petition by setting up that, at the time of the making of the contract, he had a good title in fee simple to the land; that the defendant nevertheless refused to comply with the contract; that thereafter the plaintiff, using due diligence to find a purchaser, sold the land to a third party for $900 less than, by the terms of the contract, the defendant had agreed to pay him for it; and that the value of the land at the time of the contract of sale was $900 less than the defendant agreed to give for it.

The answer, after a general denial, set up an affirmative defense, the substance of which was that the contract was conditional, and that the condition was that the plaintiff should convey to the defendant a perfect title; but that the plaintiff, being unable to exhibit to the defendant a perfect title, the contract was rescinded by the voluntary action of the parties. A replication put this new matter in issue.

The case was tried before a jury, and there was a verdict and judgment for the plaintiff, and the defendant prosecutes this appeal.

Several errors are assigned to the rulings of the trial court in admitting evidence, and in giving and refusing instructions. We do not deem it necessary to consider these assignments of error; because, after giving careful attention to the record, we have come to the conclusion that the plaintiff's evidence, giving to it its fullest effect, fails to make out a case which entitles the plaintiff to go to a jury.

The contract, which is the foundation of the action, is a receipt for $100 of earnest money on account of the purchase of the land, and contains this provision: "Title to be perfect or no sale. Title not perfect, earnest money to be refunded and examiner's fee to be paid by us ( that is by the plaintiff ), Julius C. Birge, per Fisher & Co., agents." To which is added the words, " I agree to the above. A. F. Bock."

Stating the facts according to plaintiff's evidence, it appeared that this contract of sale was signed on the tenth of April, 1884; that the defendant selected Mr. Gehner, an old and experienced examiner of titles, to examine the title and to report upon it to him; that, after the lapse of about two weeks, Mr. Gehner reported, both to the defendant and the plaintiff, that he could not recommend the title because there was a break in it in respect of the heirs of Cain J. Brown, There were, in fact, two breaks in the chain of title, that is to say, two gaps in it, which were not bridged over by anything that

appeared *of record*. This will appear from the statement that the land was, in 1827, patented by the United States to William Adams ; that in 1834 a deed of the land appears of record made by seven different persons, the wives of four of them joining therein, to Cain J. Brown ; but the deed nowhere recites who these persons were, whether they were the legal heirs of William Adams, or, if so, whether they were all his heirs, but its recitals are blank upon the question, and that in 1855 numerous persons, by various deeds reciting that they were the heirs of Cain J. Brown, conveyed the property to Joseph Rowe. The plaintiff did not know anything about the heirs of William Adams, or the heirs of Cain J. Brown. He was unable, when the objections to the title were first made by Gehner, to give any information upon the important question under consideration. The most that he could do was to take the parties across the street from the office of his agent to the office of Judge Lanham, an old citizen, largely acquainted with land titles, in order to make inquiries there ; but their inquiries failed from the circumstance that Judge Lanham was not in.

The land is situated in St. Louis county, a few miles west of the city. On the following day the plaintiff went to the neighborhood of the land and made inquiries, and returned and reported to Mr. Gehner the information he had obtained ; but he himself admits in his testimony that the information was not satisfactory.

From a clue which the plaintiff obtained in St. Louis county, he was led to believe that further information could be obtained in Montgomery county. After having telegraphed to Montgomery county, he set out for that county on the twenty-seventh of April, in quest of further information as to the missing links in the title.

Meantime defendant, becoming impatient of further delay, went with Gehner, the title examiner, to Fisher, who, it will be remembered, was the agent of the plaintiff, and there demanded a rescission of the contract, and

the return of the earnest money. To this Fisher acceded by returning the earnest money, and surrendering to the defendant the contract which is the subject of this action. The defendant continued to prosecute his investigation in Montgomery county, and there found an old man, who had married a daughter of Cain J. Brown, and from him learned who the heirs of Cain J. Brown were. This took place on the twenty-ninth of April. With his affidavit he returned to St. Louis either on that or the following day, to learn from Fisher that he, Fisher, had returned the earnest money, and surrendered the contract of purchase to the defendant. According to the plaintiff's evidence, Fisher had no authority to do this; and Fisher admits that he had none, and claims to have stated to the defendant that he had none.

After the lapse of two or three weeks, the plaintiff authorized Fisher to endeavor to effect a resale of the property to some other purchaser, and this Fisher proceeded to do. On the twentieth of June, and before Fisher had succeeded in finding another purchaser, the plaintiff, through his attorney tendered a deed of the land to the defendant, which the defendant refused to accept. On the twelfth of July, Fisher succeeded in effecting a sale of the land to another party for the sum of $6,600, which was $900 less than, by the terms of the contract in suit, the defendant had agreed to give for it. Thereafter this action was brought for the difference between what the defendant agreed to give for the land, and the amount which the plaintiff was subsequently obliged to take for it, and for other incidental damages.

In order to make clear our views upon these facts, we must go back to the interview in Fisher's office at the time when, according to the testimony of the plaintiff, Fisher, without authority from him, surrendered to the defendant the earnest money, and, also, the contract of sale. It is to be remembered that Gehner, who was

the defendant's agent to examine and report upon the title, accompanied the defendant to Fisher's office, and was present at that interview. Whether Fisher had authority to rescind the contract or not, what was there done was done by the defendant in the presence of Gehner, and it was tantamount to a rejection of the contract on the part of the defendant, and to a discharge of Gehner as the defendant's agent to examine and report upon the title. Gehner was, by what was there done in his presence, discharged as the defendant's agent, as completely as he would have been if he had been discharged in writing. Moreover, of these facts the plaintiff had full knowledge.

Gehner having thus then and there ceased to be the defendant's agent for all purposes connected with the examination and reporting upon the title, no information as to the title thereafter communicated to Gehner by the plaintiff could, upon any possible theory of the scope of Gehner's agency, affect the defendant with knowledge. No information as to what the plaintiff had discovered in Montgomery county as to the missing link or links in the chain of title was ever communicated to the defendant, or ever disclosed to him in any way until it was disclosed by the evidence adduced on the trial of this action. Such information was, however, communicated by the plaintiff to Gehner, after the return of the plaintiff from Montgomery county, and induced Gehner, upon the payment by the plaintiff to him of $25, to certify that the title of the plaintiff was good. But the plaintiff himself testifies that he procured this certificate from Gehner, and paid him for the same, not in pursuance of the original contract with the defendant, but in order to exhibit it to the new purchaser, which his agent had found, who was Miss Anna Koch. But if, after returning from Montgomery county, he had communicated all the facts concerning the state of the title to Gehner, as fully as he developed them upon the second trial, it would have made no

difference in the view we take of the case; for, as already seen, Gehner had ceased to be the agent of the defendant, for any purpose connected with the title, before the plaintiff returned from Montgomery county.

It is thus seen that the plaintiff disabled himself from performing the contract with the defendant upon his part, by conveying the land to Anna Koch on the twelfth day of July, before he had ever disclosed to the defendant the missing links in the title. But the plaintiff endeavored to make good his action for damages against the defendant by proving that, prior to that conveyance, he had *in fact* a good title, without proving that he *disclosed the fact* to the defendant.

We do not take the view, pressed upon us by the counsel for the defendant, that, in an action for damages upon such a contract as this, it is necessary for the plaintiff to show that he exhibited to the defendant a perfect *record* title. If the term perfect title means, as defendant seems to claim, an indefeasible title shown by the records, then the term contemplates a case which, under our system of conveyancing and registry, is next to impossible. The grantor in a deed in the chain of title may convey by implication as of full age, while in fact he is a minor; female grantors may be married and their deeds void for misjoinder of their husbands; or male grantors may convey as single, while in fact they are married, and convey property incumbered with a dower interest. Where there are many persons of a common name, one may attempt to convey property which in fact belongs to another. A perfect title never can be shown by the record alone, but always depends for its existence upon the record as well as upon facts outside of the record. If the burden of showing title rests with the vendor, and he exhibits a complete chain of title by the record, which is apparently regular on its face, he has done all that the law requires of him in the first instance; and, if the

vendee then challenges the title thus exhibited, the burden is upon him to show that imperfections, such as above stated, are in the title, owing to matters outside the record.

The rule, even as above stated, can apply to cases only where there is no necessary break in the record title, by death, marriage or other causes, Where there is no will, and especially where there is no administration, the devolution of title in this state does not take place by matter of record; but, upon the death of the ancestor, the title vests immediately in his heirs by descent. Marriage changes the name of the female, and the deed seldom discloses her former name. In this class of cases it would seem, by analogy, that it would be sufficient for the vendor to show in the first instance, by the recitals of the record itself, if the record so recites, that certain grantors were all the children of A; or that B, married to C, was formerly E, giving her name as a maid or widow. If the record does not so recite, then the least that can be required of the vendor is that he adduce some other *prima facie* evidence of that fact, before he can put the vendee in the wrong for refusing to accept the title.

The contract in suit is to be regarded as a contract of sale, conditioned on the vendor exhibiting to the vendee a perfect title. For the reasons above stated, we do not hold that this means a perfect title in the strict sense of the word perfect; for, roughly speaking, there are no such titles. But we suppose that it means a title that is perfect and safe to a moral certainty; a title, which does not disclose a patent defect which suggests the possibility of a lawsuit to defend it; a title, such as a well-informed and prudent man, paying full value for the property, would be willing to take. We also construe this contract as stipulating that the vendor will assume the burden of exhibiting to the vendee, within a reasonable time, such a title. If he has *prima facie* a

perfect title of record, it may be assumed that he discharges his undertaking by exhibiting to the vendee the certificate of a competent title examiner, affixed to what purports to be an abstract of all the conveyances affecting the property, such abstract showing a complete chain of title and disclosing no flaws. We also hold that, if, after thus exhibiting to the vendee such a chain of record title as he may have, it appears that there is a break or gap in it, the vendor, and not the vendee, must look up the evidence *in pais*, which is necessary to supply the gap and to show that the title is good. And he must communicate this evidence to the vendee, before the latter can be put in the wrong for refusing to take the title. He is under just as strong an obligation to do this, as he is to exhibit to him his abstract of title. This was evidently the view which the plaintiff took of his obligations under the contract, for he undertook to look up such evidence, but his failure consisted in failing to communicate it to the defendant prior to the time when, by conveying the land to Anna Koch, he had disabled himself from performing his contract with the defendant on his part.

This action has been brought on the part of the plaintiff on the theory that he need only to show that, at the time when the contract was made and broken, he had a good title *in point of fact*. In an equitable action by a vendor for specific performance, it is, in the absence of equitable circumstances which need not be adverted to, sufficient if the vendor exhibits a good title at the time of the decree. *Luckett v. Williamson*, 37 Mo. 388; *Isaacs v. Skrainka*, 95 Mo. 518. It may be assumed that the same rule obtains in actions at law for the entire purchase money, where the plaintiff tenders a deed of the land to the defendant, and stands before him at the trial, making good his tender and offering to convey. Whether such is the rule or not in such an action, we need not consider. But there is a manifest distinction between such actions, and such an action as

Birge v. Bock.

the one under consideration, where, instead of tendering the deed and making good the tender, and suing in equity for a specific performance, or suing at law for the purchase money, the vendor conveys to a third person at a less price, and sues the vendee for the difference. In both the former cases the vendee gets what he bargains for—a good title to the land; but in the latter case he gets nothing, but pays damages to the vendor. The true question in this case is, which party is to take the risk of a defect in the title at the time when the vendor tenders the deed to the vendee, or at most at the time when the vendor, by conveying the land to a third party, disables himself from conveying it to the vendee? If the vendee is to take the risk,—and that was the theory on which this action was originally brought,—then, whenever the vendor tenders a deed and the vendee refuses it, the contract is broken on the part of the vendee, although the vendor has not exhibited to him a good title. But if, as we hold, the vendor is to take the risk, then the tendering by him to the vendee of a deed is an idle ceremony, before he first exhibits to the vendee a good title. As the vendor in this case never exhibited to the vendee a good title until the trial of this action, we hold that there had not been, either at the time of the tender of the deed, or of the conveyance of the land to Anna Koch, or of the bringing of this action, a breach of the contract on the part of the defendant.

For these reasons, we are of opinion that the evidence adduced by the plaintiff shows no right of recovery on his part as matter of law.

The judgment will accordingly be reversed. All the judges concur.

### ON REHEARING.

THOMPSON, J.—A motion for rehearing, and a reargument which has taken place on the rehearing which we granted, have not served to convince us that we were

in error as to the principles of law that must be applied
to the state of facts exhibited at the last trial.    But the
reconsideration, which we have given to the case, has
raised a doubt in our minds upon the question, whether
the theory of law upon which we disposed of the case
in our opinion, was the theory of either party under
the pleadings, and whether that theory was contested
in the court below.    If it was not so contested, our
judgment, in so far as it finally disposes of the case,
violates the well-settled rule of appellate procedure,
that a cause cannot be tried on one theory in the trial
court and disposed of on another theory in the appel-
late court.    The plaintiff is entitled to a fair opportu-
nity to show a state of facts which will take the case
out of the principles of law announced by this court in
its opinion, if he can.    We adhere to that opinion as
an expression of our views as to the governing princi-
ples of law on the facts disclosed at the last trial, but
modify our judgment so as to remand the cause for pro-
ceedings not inconsistent therewith.

In view of the cause being remanded, it is proper to
add that, in the judgment of this court, the trial court
committed error in admitting evidence of the conversa-
tion which passed between the plaintiff and his agent
Fisher, after Fisher had undertaken to rescind the con-
tract.    The authority which a principal has given his
agent is a *fact* which may be proved by giving in evi-
dence any *words*, oral or written, by which that author-
ity was communicated, and that is not hearsay evidence.
But, after the authority has been given and executed by
the agent, the conversations between the principal and
the agent consisting of questionings by the principal
and explanations by the agent as to why he executed
the authority as he did, are, on plain grounds, merely
hearsay evidence as against a third party.

But we do not take the view that the court erred in
admitting in evidence the conversations which took
place between Gehner and the plaintiff, and Gehner's

statements concerning the title, while Gehner's agency for the defendant subsisted. It was natural, and probably within the intention of the parties, that any facts which the plaintiff might wish to communicate to the defendant concerning the title should be communicated to Gehner, just as a litigant communicates with the attorney of the opposite party to the litigation. The declarations of Gehner in these conversations as to what would be necessary to make the title satisfactory were, therefore, a part of the *res gestæ*, though not conclusive upon the defendant.

We do not think it necessary to examine in detail the instructions which were given and refused, because we have indicated in our last opinion a theory of the law entirely different from the one on which the case was submitted to the jury, and, therefore, on another trial the instructions will probably have to be recast.

All the judges concurring, the judgment of the circuit court is reversed and the cause remanded.